FREDERICK VON HOFEN, HOWARD ANDERSEN, GORDON SHERWOOD, JR., AND C. E. McLAUGHLIN, APPELLANTS, v. EDWARD ONCKEN AND MERL SAGE, RESPONDENTS.

No. 4240

April 27, 1960

351 P.2d 614

*Goldwater and Singleton,* of Las Vegas, for Appellants.

*Denton and Smith* and *George F. Ogilvie, Jr.,* of Las Vegas, for Respondent Oncken.

*Foley Bros.,* of Las Vegas, for Respondent Sage.

## OPINION

By the Court, PIKE, J.:

Appellants who were defendants in two separate actions in which respondents Oncken and Sage, respectively, were plaintiffs, appeal from judgments for money in favor of each of the respondents. The two actions, involving identical issues, were consolidated for purposes of trial and also on this appeal.

Respondents Oncken and Sage, together with a third person not a party to this litigation, owned all of the issued and outstanding corporate stock of Nevada Broadcasting Company, Inc., a Nevada corporation, which operated a radio broadcasting station in Las Vegas, Nevada. By written agreement of purchase and sale dated May 1, 1957 appellants agreed to purchase all of the stock owned by each of the respondents and, upon the failure of appellants to pay for the same within the time provided in the agreement, each respondent separately brought suit for the sum of $2,250. The answers filed by appellants in each of the two actions

denied the indebtedness and, by way of affirmative defense, pleaded that, by reason of a breach by each seller of a warranty contained in the contract, appellants had been damaged in the sum of $6,500. In addition to this affirmative defense, appellants also claimed certain offsets due either under the contract or a letter executed by the sellers in connection therewith.

The trial court entered a judgment in favor of Oncken as seller in the sum of $1,783.26 together with interest and costs and for an attorney's fee. An identical judgment was entered in favor of Sage in the action brought by him.

The principal amount of the judgment entered in favor of each seller was the amount sought to be recovered by each from appellants as the agreed purchase price of the stock, stated in the agreement, reduced by the amount of certain offsets claimed by the purchasers and allowed by the court.

This consolidated appeal is taken from each of those two identical judgments against appellants and in favor of respondents Oncken and Sage, respectively. As the amount of the offsets accorded the purchasers against the agreed purchase price of the stock is not involved in this appeal, we are concerned solely with the affirmative defense asserted by appellants to the effect that, by reason of a breach by each seller of a warranty contained in the contract, appellants were damaged in an amount in excess of the amount sought by each seller as the purchase price of his stock. More specifically the purchasers sought to establish before the trial court that certain financial statements of the radio broadcasting corporation forming part of the written agreement between the parties, did not fairly present the financial condition of said corporation and had not been prepared in accordance with "generally accepted accounting principles" as stated in the agreement. In such agreement respondents as sellers had represented and warranted that the balance sheet of the corporation as of March 31, 1957 and the profit and loss statements for the years ending March 31, 1956 and March 31, 1957, all of which

were part of the agreement, correctly and fairly represented the financial condition of the corporation at the date of said balance sheet and the results of its operations for said years. Further, the agreement provided that "all such financial statements have been prepared *in accordance with generally accepted accounting principles.*"

In this connection appellants, as purchasers, maintained that three accounts due the broadcasting company from Las Vegas concerns totaling $5,268.34 had been carried in a record of "accounts receivable" dated about April 22, 1957 and prepared by the corporation's bookkeeper, and that under generally accepted accounting principles each of said accounts should not have been so treated and should have been written off the books of the corporation as bad debts because each was, in fact, an uncollectible account.

The purchasers tendered evidence in support of this affirmative defense, which included the testimony of C. E. McLaughlin, one of the purchasing group, who had been a practicing certified public accountant in another state for many years prior to the corporate stock transaction which is the subject matter of this appeal. McLaughlin testified that, prior to entering into the agreement, he was familiar with the accounting procedures followed by Rudd in preparing the March 31, 1957 financial statement, but that his knowledge of the accounts receivable was confined to what appeared in the general ledger, showing totals only. Other purchasers in their testimony also claimed lack of knowledge of individual accounts receivable.

The sellers maintained that they had not breached the warranty contained in the agreement, and that the factual status relating to each such account was such as to justify its inclusion in the list of accounts receivable in accordance with generally accepted accounting principles. They introduced evidence in support of such contention and also that the purchasers had been informed concerning the collectibility of each of the accounts under discussion, as well as the accounting

practices followed in the preparation of the financial statements prior to entering into the written agreement, and that the purchasers had suffered no damage.

Merl Sage, who had been manager of this radio broadcasting station business, and one of the sellers herein, and Mrs. Leona Mitchell, bookkeeper, both testified concerning the examination into the financial condition of the corporation which had been made by the then prospective purchasers prior to the signing of the contract of purchase of May 1, 1957. Sage testified concerning his discussion with the purchasers of the accounts receivable and of their checking into the collectibility of certain of the same as early as March 1957, and that the list of such accounts, hereinafter referred to, prepared by the bookkeeper, had been asked for by McLaughlin, one of the prospective purchasers. The testimony of the buyers disputed much of this evidence, particularly as it related to their knowledge of the collectibility of the accounts receivable of the corporation.

Upon this conflicting evidence the trial court found that, on entering into the contract, the buyers had full and complete knowledge of the affairs of the broadcasting company and its financial condition and the information contained in its books and records of account, and that no misrepresentations were made by either of the respective sellers to the buyers to induce the buyers to enter into such contract.

Included in the evidence was the list of accounts receivable above referred to, a copy of which had been handed to purchasers about April 24, 1957, according to the testimony of the corporation's bookkeeper and secretary who had prepared them. This list, which included the three accounts under discussion, consisted of a total of more than 90 accounts, setting forth the name and address and the total amount of each account, and the balance of the account as of December 31 (1956). It also showed any sums paid on each account during the months of January, February and March (1957). In addition, under a "remarks" column of such tabulation, there was a brief statement characterizing the accounts' status as "see Merl" [Merl Sage], "to be

written off," "out of business," "current," pertaining to the great majority of the individual accounts. The contract between the parties credited a total agreed amount to the purchasers as an allowance for doubtful accounts. However, such allowance was applied to accounts other than the three particular accounts now under consideration. As to these three accounts, which were the three largest carried in the list of accounts receivable, there appear in the compilation of accounts receivable, just mentioned, statements of the following import relating to the status of each of them: (1) referring to a debtor advertising agency account, stated that one of its principals who had been with such agency when the indebtedness had been incurred, was presently associated with another individual in a new advertising agency; (2) to see the owner of the particular debtor club, naming him; (3) "Gov't. Padlocked A/C. Failure to pay taxes. Check with Merl for latest status."

The sellers called Jack Rudd as a witness at the trial. He was the certified public accountant, practicing in Las Vegas, who had prepared the financial statement of the broadcasting company dated March 31, 1957 charged by the purchasers not to have been prepared in accordance with "generally accepted accounting principles." This accountant testified that his firm had not been retained to perform an audit, but had prepared the statement from the ledger of the corporation. He also testified that he had first met McLaughlin about February or March of 1957, before he prepared the financial statement just mentioned, and had discussed the preparation of the March 31 financial statement with him and also with Von Hofen. This particular financial statement became an exhibit on the contract of purchase, and a copy was also furnished to the Federal Communications Commission in connection with the transfer of the control of the station and its license to purchasers. His testimony also referred to a telephone conversation which he had with McLaughlin, prior to the signing of the contract, in which he discussed with McLaughlin the collectibility of certain of the accounts receivable.

In order for appellants to have sustained their affirmative defense of breach of warranty in the trial court it was, of course, necessary that they establish that generally accepted accounting principles had not been followed in the preparation of the particular financial statements. McLaughlin testified that he was familiar with the accounting methods and procedures followed by Rudd in the preparation of the statements. No objection was made to such procedures until several months after the signing of the contract when the buyers notified the sellers of their refusal to pay the agreed purchase price for the stock. Any evidence before the trial court tending to show a failure to follow generally accepted accounting principles would necessarily be found in the testimony of the three certified public accountants. They were McLaughlin, Clifford E. Roop, and Rudd, all of whom undertook to testify as expert witnesses. Each was asked hypothetical questions pertaining to the inclusion, under generally accepted accounting principles, of each of the three accounts as a current account receivable. Each such hypothetical question had as one of its elements an assumed knowledge on the part of the accountant of the existence of tax liens filed against the particular debtor. With this presupposed element of knowledge of tax liens having been filed against the person owing the money interjected into each hypothetical question, each expert witness testified in effect that, under acceptable accounting principles, the account would not have been carried as a current account receivable as of May 1, 1957. However, Rudd, who prepared the statement under consideration, testified that he had prepared it from material in the corporation's general ledger. There is nothing in the record indicating that such source from which Rudd prepared the financial statement disclosed the existence of any tax liens, and there is a complete lack of evidence that Rudd had any knowledge of the liens at the time that he prepared the statement. Likewise, we find no evidence in the record that generally accepted accounting principles required Rudd to go outside and beyond

the material contained in the general ledger for the purpose of determining the existence of any tax liens. This being true, we find a failure of proof as to any contended noncompliance with the asserted warranty. Accordingly, the buyers having failed to introduce evidence showing a breach of the asserted warranty, there was a failure on their part to establish such affirmative defense to payment of the purchase price of the stock; and the findings and judgment of the trial court in favor of each respondent, supported by substantial evidence, will not be disturbed. Goldsworthy v. Johnson, 45 Nev. 355, 363; 204 P. 505, 507. Judgment in favor of each respondent affirmed.

McNAMEE, C. J., and BADT, J. concur.